# United States Court of Appeals

## For the First Circuit

No. 01-1043

CAMBRIDGE LITERARY PROPERTIES, Ltd.,

Plaintiff, Appellant,

v.

W. GOEBEL PORZELLANFABRIK G.m.b.H & Co. Kg.,
GOEBEL VERWALTUNGS - und BETEILIGUNGSGESELLSCHAFT m.b.H.,
the General Partner of GOEBEL PORZELLANFABRIK G.m.b.H. & Co. Kg.,
and its former General Partners, WILHELM GOEBEL and ULRICH
STOCKE, and GOEBEL ART G.m.b.H., d/b/a GOEBEL OF NORTH AMERICA,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nancy Gertner, U.S. District Judge]

Before

Boudin, Chief Judge,

Bownes, Senior Circuit Judge,

and Lipez, Circuit Judge.

Henry Hermann for appellant.
David P. Shouvlin with whom Porter, Wright, Morris & Arthur
LLP, Joseph D. Steinfield, Kirsten Nelson Callahan and Hill &
Barlow were on brief for appellees.

July 9, 2002

BOUDIN, Chief Judge. Cambridge Literary Properties Ltd. ("Cambridge") brought this suit against W. Goebel Porzellanfabrik G.m.b.H & Co. Kg. ("Goebel"), a German limited partnership, and others associated with it.[1] The complaint sought a share in the profits gained by defendants from the use of images taken from the Hummel Book in which Cambridge claims a copyright interest. The district court granted defendants' Rule 12(b) motion and dismissed the case for lack of personal jurisdiction. We describe the underlying events in the light most favorable to Cambridge as the non-moving party. Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 203 (1st Cir. 1994).

The Hummel Book contains images of children drawn by a German nun, Sister Berta Maria Innocentia Hummel, accompanied by the verse of an Austrian poet, Margarete Seemann. Emil Fink Verlag, a German citizen, first published the book in German in 1934 under contract with Hummel and Seemann. Fink registered the book as a foreign publication under U.S. copyright law in 1936 and later introduced an English language version of the book into the United States.

Cambridge claims that for purposes of U.S. copyright law the Hummel Book is a work of joint authorship by Hummel, Seemann, and Fink (who apparently contributed some illustrations). See 17

_____

[1]The other defendants are Goebel Art G.m.b.H., a German corporation; Goebel Verwaltungs-und Beteilgungsgesellschaft m.b.H., a German closely held corporation and Goebel's current general partner; and Wilhelm Goebel and Ulrich Stocke, residents of Germany and former general partners in Goebel. The three institutional defendants have their principal place of business in Roedental, Germany.

U.S.C. § 101 (2000); see generally 1 Goldstein, Copyright § 4.2 (2d ed. Supp. 2000). Thus, Cambridge says, the original authors each held an ownership interest as a tenant in common in the original U.S. copyright. In 1962, Fink renewed the U.S. copyright. Under the then applicable Copyright Act of 1909, Pub. L. No. 60-349, 35 Stat. 1075 (repealed 1976), the renewal interests belonged to the original owners, or to their heirs, regardless of any intervening assignments under the original copyright. Miller Music Corp. v. Charles N. Daniels, Inc., 362 U.S. 373, 374-75 (1960).

Cambridge claims an ownership interest in the renewal copyright by purchase from the heirs of Seemann, who died in Austria in 1949. Cambridge says Goebel and Goebel Art have at various times owned the other interests in the renewal copyright. Goebel, according to Cambridge, purchased Fink's interest in 1971, before assigning it to a Swiss Company, ARS AG, allegedly half owned and controlled by Goebel Art, in 1991. Goebel Art allegedly acquired the other share, tracing back to Sister Hummel, from Goebel's former U.S. distributor, Schmid Brothers, Inc., in 1994.

Illustrations in the Hummel Book allegedly served as models for a continuing series of porcelain figurines, called Hummels. These figurines have proved popular with collectors in America. Goebel, or one or more related predecessor partnerships, have apparently been manufacturing the figurines since 1935. Individual Hummel figurines sell for several hundred dollars apiece and the direct revenues from American sales are alleged to be in the millions.

Cambridge asserts that the figurines comprise derivative works and their sale in the United States is governed by the renewal copyright in the Hummel Book.  Each co-owner of the renewal copyright, says Cambridge, is free to exercise rights under the copyright but owes a share of the profits to each other co-owner.  See 1 Goldstein, supra, § 4.2.2.  On this basis, Cambridge claims a share of the profits garnered by Goebel from U.S. sales of the figurines and certain indirect profits reaped by Goebel Art; allegedly, Goebel Art markets the figurines and operates a lucrative club for Hummel collectors in the United States using images derived from the book.

In February 2000, Cambridge brought the present suit in federal district court in Massachusetts, seeking an accounting and imposition of a constructive trust to recover its alleged share of the profits.  The defendants responded by filing a motion to dismiss under Rule 12(b)(2) for lack of personal jurisdiction.[2]  Cambridge's main response was that the district court had specific jurisdiction under the Massachusetts long-arm statute, which provides (most pertinently) that

> [a] court [in Massachusetts] may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's (a) transacting any business in this commonwealth . . . .

Mass. Gen. Laws chap. 223A, § 3 (2000).

---

[2]In the alternative, the defendants sought transfer to the District of New Jersey on grounds of forum non conveniens.  The district court did not reach this alternative request and neither do we.

-4-

After the filing of memoranda, documents, and affidavits, the district court dismissed for lack of personal jurisdiction. The district court assumed, at least for purposes of argument, that Goebel had "transacted business" in Massachusetts by shipping all of its U.S.-bound Hummel figurines from its factory in Germany F.O.B. to its independent distributor, Schmid Brothers, in Massachusetts, at least from 1988 to 1994. At their peak, these shipments totaled over $20 million annually. (After 1994, Goebel shipped the Hummels to a New Jersey company that was a wholly owned subsidiary of Goebel Art.)

However, the district court held that Cambridge had not satisfied the further requirement of showing that its claims "arose from" these shipments. The court said that accounting and constructive trust are merely remedies and Cambridge's claim to a share of profits depended on its establishing a series of propositions (e.g., that Seemann was a joint author and that Cambridge held a valid ownership interest through her heirs). These in turn depended, said the court, on events in Europe dating back many years and had no connection with sales or distribution in Massachusetts. The district court then dismissed as to all defendants. Cambridge now appeals.

The issues on appeal are largely legal ones subject to de novo review. Boit v. Gar-Tec Prods., Inc., 967 F.2d 671, 675 (1st Cir. 1992). Because the court did not hold an evidentiary hearing, we must look to the pleadings and supplemental filings to determine whether Cambridge has alleged facts sufficient to support the

-5-

exercise of jurisdiction under both the long-arm statute and the Constitution. <u>Lyle Richards Int'l, Ltd.</u> v. <u>Ashworth, Inc.</u>, 132 F.3d 111, 112 n.1 (1st Cir. 1997).

To begin with what is undisputed, Cambridge does not rely on any special federal statute providing for nationwide or otherwise expanded service. <u>See</u> <u>Janmark, Inc.</u> v. <u>Reidy</u>, 132 F.3d 1200, 1201 (7th Cir. 1997). Indeed, it is unlikely that any federal cause of action is asserted, even though federal law is the source of the Hummel Book copyright itself. In all events, the district court properly considered whether a Massachusetts state court could exercise personal jurisdiction over the defendants. <u>See</u> <u>id.</u>; <u>Sawtelle</u> v. <u>Farrell</u>, 70 F.3d 1381, 1387 (1st Cir. 1995).

However, the jurisdictional inquiry is largely a federal constitutional one. Massachusetts courts construe section 3(a)'s "transacting business" requisite as extending jurisdiction as far as permitted by the due process clause of the Fourteenth Amendment. <u>Tatro</u> v. <u>Manor Care, Inc.</u>, 625 N.E.2d 549, 553 (Mass. 1994); <u>see also</u> <u>"Automatic" Sprinkler Corp. of Am.</u> v. <u>Seneca Foods Corp.</u>, 280 N.E.2d 423, 424 (Mass. 1972). We have on occasion held jurisdiction to be barred on due process grounds where the literal terms of the statute might seem to permit it. <u>Bond Leather Co., Inc.</u> v. <u>Q.T. Show Mfg. Co., Inc.</u>, 764 F.2d 928, 932-35 (1st Cir. 1985). So, in the ordinary case, we can proceed directly to the constitutional due process test. <u>See</u> <u>Sawtelle</u>, 70 F.3d at 1388.

The due process cases impose three requirements on the exercise of <u>specific</u> personal jurisdiction over out-of-state

defendants.  <u>United Elec., Radio and Mach. Workers of Am. v. 163</u> <u>Pleasant St. Corp.</u>, 960 F.2d 1080, 1089 (1st Cir. 1992).  (By contrast, if a defendant has continuous and systematic contacts with the state, courts in the state may exercise <u>general</u> jurisdiction over <u>any</u> cause of action against the defendant.  <u>Id.</u> at 1088.)  To begin, the defendant must have purposeful "minimum contacts" with the state.  Further, the exercise of jurisdiction must be "reasonable" under the circumstances.  The third requirement, on which this case turns is that the plaintiff's claims be related to the defendant's contacts.  960 F.2d at 1089.

Section 3(a) expresses this relatedness requirement by addressing itself only to claims "arising from" the transaction of business in Massachusetts.  However, "relatedness" may be a broader concept, and we assume Massachusetts courts would again construe the statute as extending to its constitutional limit.  <u>Tatro</u>, 625 N.E.2d at 553-54.  In sum, under section 3(a) and the Constitution, specific jurisdiction requires a nexus between the claim and defendant's in-state activities; thus the district court quite properly focused at the outset on the relationship between Goebel's Massachusetts contacts and Cambridge's claims.

As previously noted, Goebel's direct sales to Massachusetts were substantial for a period ending in 1994.[3]  The

_____

[3]In addition, a portion of Goebel's shipments to the U.S. (between $250,000 and $1 million annually) were sold by Schmid or Goebel Art's New Jersey subsidiary to retailers in Massachusetts. However, sales by an independent distributor (Schmid) or separately incorporated subsidiary normally do not count as "contacts" of the manufacturer or parent corporation.  <u>Boit</u>, 967 F.2d at 682-83; <u>United Elec. Workers</u>, 960 F.2d at 1091.

shipment of large quantities of goods into a state, even F.O.B. can satisfy the minimum contacts prong of the due process inquiry. See Vencedor Mfg. Co., Inc. v. Gougler Indus., Inc., 557 F.2d 886, 890-91 (1st Cir. 1977); Buckeye Assocs., Ltd. v. Fila Sports, Inc., 616 F. Supp. 1484, 1490 n.7 (D. Mass. 1985); Mark v. Obear & Sons, Inc., 313 F. Supp. 373, 376-77 (D. Mass. 1970). But the district court ultimately concluded that there was an insufficient "causal nexus between plaintiff's claims and Goebel's Massachusetts contacts." To test that conclusion, we must ask, what are those claims and what conduct do they subsume?

The current federal copyright statute, although recognizing jointly owned copyrights and inheritance of rights, is silent as to the law governing joint ownership and inheritance; it is similarly silent as to what law provides remedies in disputes between co-owners. See H.R. Rep. No. 94-1476, at 121, reprinted in 1976 U.S.C.C.A.N. 5659, 5736 ("There is no need for a specific statutory provision concerning the rights and duties of the coowners of a work; court-made law on this point is left undisturbed."). Unsurprisingly, courts often look at state law. See, e.g., DeSylva v. Ballentine, 351 U.S. 570, 580-81 (1956); Goodman v. Lee, 78 F.3d 1007, 1012 & n.16 (5th Cir. 1996).

Doubtless a Massachusetts court--if it proceeded to the merits of our case--would find, either in its own law or elsewhere, some cause of action to redress any wrongful withholding of profits by one joint copyright owner from another. Probably in every state, and one may suppose in Germany and Austria as well, legal

-8-

vehicles exist for sorting out rights of co-owners of intangible property interests and to redress wrongful withholding of profits by one from another. Nor would a Massachusetts court, in its choice of law decisions, necessarily apply the law only of one jurisdiction; probably the choice would depend on the precise issue in dispute.[4]

For present purposes, it does not greatly matter just how one denominates the cause of action to recover profits wrongfully withheld, nor whether it arises under Massachusetts law. "Claim" or "cause of action" usually refers to an abstract legal theory for recovery; but in deciding whether specific jurisdiction exists, the legal theory advanced is important primarily to tell us what alleged <u>conduct</u> matters to the case at hand. The basis for specific jurisdiction is that a defendant's Massachusetts contacts not only exist but are sufficiently related to the events that make up the case.

Here, the conduct pertinent to the case is likely to be pretty much the same whether an "accounting" is regarded as a cause of action (as Cambridge contends) or merely (as defendants urge) a remedy for some other claim such as breach of contract, unjust enrichment, or the like. Whatever the label, Cambridge must show that it has part ownership in the U.S. renewal copyright, that

---

[4]It is possible to imagine a Massachusetts court looking to federal copyright law and German contract law as to whether Hummel, Seemann, and Fink are co-owners; Austrian inheritance law if the Seemann rights are disputed; federal copyright law as to whether the figurines are derivative works; and to the law of any of several jurisdictions as to rights and defenses among co-owners and available remedies.

profits were derived from the use of the copyright in the U.S., and that Cambridge's share was wrongfully withheld by the defendant in question. There may be other issues (e.g., ones pertinent to defenses) but the showing just described has to be the gist of Cambridge's claim.

Can one then say that such a claim is sufficiently related to the defendants' Massachusetts contacts? Ordinarily, jurisdiction is determined separately as to each defendant. Calder v. Jones, 465 U.S. 783, 790 (1984). Focusing for now on Goebel as the lead defendant, one aspect of the pertinent conduct (and perhaps one aspect only)--namely, the derivation of profits from use of the copyright--is directly linked to Goebel's contacts with Massachusetts, namely, its shipment of figurines into the state.

The generation of profits is certainly a "but for" cause of Cambridge's claim and, according to the Massachusetts courts, this is all that section 3(a)'s "arising from" provision requires. Tatro, 625 N.E.2d at 553. However, "but for" events can be very remote and, on some facts, the due process clause arguably requires more than a literal "but for" link between the Massachusetts contact and the asserted cause of action. Suppose Goebel had been founded in Massachusetts but then reorganized as a German partnership in 1930. Formation in Massachusetts would arguably be a "but for" cause of its subsequent operations, but it would hardly be an adequate nexus.

Nonetheless, assuming (as we do) that due process demands something like a "proximate cause" nexus, Nowak v. Tak How Invs.,

-10-

Ltd., 94 F.3d 708, 715-16 (1st Cir. 1996), the shipment of figurines into Massachusetts does play a close and significant role in Cambridge's claims since it is the source of most of the profits in dispute. The case law supports personal jurisdiction in analogous cases. For example, in Keds Corp. v. Renee International Trading Corp., 888 F.2d 215 (1st Cir. 1989), we held that an out of state manufacturer that sold 6,000 pairs of shoes in Massachusetts was subject to personal jurisdiction in Massachusetts as to a related trademark infringement action.[5]

The district court stressed that other issues, implicating conduct wholly outside the United States--particularly, events in Germany and Austria relating to Cambridge's asserted ownership interest--were antecedent to any concern about sales in Massachusetts. Certainly without a copyright interest, Cambridge could not recover; but it is hard to see why this matters to jurisdiction. The shared concern of the statute and the due process precedents is whether the claim in some significant degree arises from defendant's contacts with Massachusetts. That events elsewhere also bear upon the claim, and may indeed be the main (or only) subjects of actual dispute at trial, does not negate the existence of minimum Massachusetts contacts related to the claim.

---

[5]Accord, Gary Scott Int'l, Inc. v. Baroudi, 981 F. Supp. 714 (D. Mass. 1997) (California defendant subject to personal jurisdiction in trademark action involving defendant's sale of allegedly infringing humidors in Massachusetts); Knapp v. Utech Prods., Inc., 2001 WL 716890 (Mass. Super. 2001) (sales of software sufficient to create long-arm jurisdiction over defendant who allegedly failed to pay royalties pursuant to contract made in New York).

Imagine a defective product made solely in Germany but shipped into Massachusetts.

Such minimum related contacts merely supply the threshold showing (apart from reasonableness to which we will return) required for the court to assert jurisdiction.  What issues will in fact predominate at trial, where witnesses as to them reside, and a host of other variables bear on whether the court should hear the case or whether transfer or dismissal in favor of some other venue is warranted.  Iragorri v. Int'l Elevator, Inc., 203 F.3d 8, 12 (1st Cir. 2000).  But as for related minimum contacts, the shipments to Massachusetts are central to recovery here, and Goebel itself does not deny that such shipments did occur.

Goebel suggests that we look only at its most recent direct contacts with Massachusetts, which are much more limited, but does not say why.  Cambridge answers--correctly, we think, see Gen. Motors Corp. v. Ignacio Lopez De Arriortua, 948 F. Supp. 656, 663 (E.D. Mich. 1996)--that for purposes of specific jurisdiction, contacts should be judged when the cause of action arose, regardless of a later lessening or withdrawal.  Conceivably, Goebel could have argued that the court lacks jurisdiction over it for any claim relating to shipments made after 1994, when it stopped shipping directly to Massachusetts, but even that argument has not been made and so is abandoned.

Goebel Art is, if separately considered, in a different position than Goebel vis-a-vis personal jurisdiction.  According to Cambridge, Goebel Art made use of copyrighted material from the

-12-

Hummel Book in providing marketing services in Massachusetts (and elsewhere) to promote the sale of Hummel figurines and in promoting its M.I. Hummel Club, which provides fee-paying members--1,500 to 2,000 of whom reside in Massachusetts--with information on Hummel products and the opportunity to buy Hummel merchandise online via a Club website.  Just how far these activities generated profits that Goebel Art is arguably required to share is unclear, but nothing responsive argued by defendants allows us to dismiss this claim of jurisdiction out of hand.  See Hasbro, Inc. v. Clue Computing, Inc., 994 F. Supp. 34 (D. Mass. 1997).

There remains, for due process purposes, the further question whether despite relevant minimum contacts by both Goebel and Goebel Art, it is "reasonable" for the district court in Massachusetts to exercise personal jurisdiction with respect to these claims. United Elec. Workers, 960 F.2d at 1088.  The Supreme Court has identified a set of so-called "gestalt" factors to be considered, including the burden on defendant in appearing, the forum's interest in resolving the matter, plaintiff's interest in a convenient forum, and two factors that might go under the heading of "public interest."  See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292 (1980).

The gestalt factors rarely seem to preclude jurisdiction where relevant minimum contacts exist.  Here, as is likely true in many cases, the plaintiff has an interest in litigating conveniently in its home state, which in turn has an interest in affording its citizens a convenient forum.  And while Germany would

-13-

surely be more convenient for defendants, litigation in Massachusetts cannot be impossibly burdensome for defendants who, by their own admission to the district court, are prepared to defend in New Jersey where Goebel Art's North American subsidiary is based.

This conclusion makes it unnecessary to consider two other theories advanced by Cambridge for jurisdiction as to both Goebel and Goebel Art. One is that the two companies are so integrated that they should be treated as one entity and their contacts aggregated for purposes of determining personal jurisdiction. So far as this is a veil-piercing argument, the "presumption of corporate separateness" is difficult to overcome, United Elec. Workers, 960 F.2d at 1091, and Cambridge's conclusory allegations do not suffice. If some different argument for attribution of contacts is contemplated, cf. Donatelli v. Nat'l Hockey League, 893 F.2d 459, 465-66 (1st Cir. 1990), the argument is undeveloped.

In the alternative, Cambridge asserts that general jurisdiction can be established as to Goebel and Goebel Art. Defendants claim that this argument was not preserved in the district court, and it is a close question whether the issue has even been preserved on appeal. Cambridge's opening brief makes almost no effort to develop the facts necessary to show a "continuous and systematic" presence in Massachusetts, United Elec.

<u>Workers</u>, 960 F.2d at 1088;[6] its brief legal discussion is incomplete as well, <u>see</u> <u>Mass. Sch. of Law</u> v. <u>Am. Bar Ass'n</u>, 142 F.3d 26, 43 (1st Cir. 1998). In all events, it is hard to see why general jurisdiction now matters, since the prima facie showing thus far is enough for specific jurisdiction as to Goebel and Goebel Art.

As to the other three defendants (see note 1, above), we sustain outright the district court's dismissal. The three comprise current or former general partners in Goebel, which is itself a limited partnership. The two individuals say they have no regular contacts with Massachusetts though each admits (without providing detail) that he visited Massachusetts several years ago. The corporate general partner is completely silent. Cambridge makes no claim that any of the three had contacts with the state relevant to the present case.

Instead, Cambridge relies on the bald proposition that personal jurisdiction over a partnership automatically conveys personal jurisdiction over each of the partners or at least the general partners. For this view it offers no citations nor any reasoned argument. Our own brief look into the law reveals that there is a diversity of views among various courts and that something may turn on the law where the partnership was formed. <u>Compare</u> <u>Sher</u> v. <u>Johnson</u>, 911 F.2d 1357, 1365 (9th Cir. 1990), <u>with</u>

---

[6]Cambridge points merely to a few additional contacts with the forum that are apparently unrelated to its claim: it says Goebel sold some (non-Hummel) crystal to a retailer in Massachusetts and it alleges that Goebel Art employed a sales representative who resided in the Commonwealth.

<u>Jackson Nat'l Life Ins. Co.</u> v. <u>Greycliff Partners, Ltd.</u>, 2 F. Supp. 2d 1164, 1167 (E.D. Wis. 1998). <u>See generally</u> <u>Miller</u> v. <u>McMann</u>, 89 F. Supp. 2d 564, 569 (D.N.J. 2000).[7]

Cambridge's legal position on this issue is not sufficiently developed to be preserved. A party advancing a legal claim must make a respectable effort to argue it, supplying pertinent authorities or accounting for their lack. <u>Mass. Sch. of Law</u>, 142 F.3d at 43. At least where the proposition is open to doubt, it is not enough to assert it and hope the court will do the research. We conclude that Cambridge's proposition is arguable but not obvious and that no other colorable basis for jurisdiction has been preserved as to the remaining three defendants.

Accordingly, we <u>vacate</u> the district court's dismissal as to Goebel and Goebel Art but <u>affirm</u> its dismissal as to the other three defendants. On remand, the district court remains free to consider transfer or dismissal on other grounds that were urged but not reached or which the court allows to be urged hereafter. Each side shall bear its own costs on this appeal.

<u>It is so ordered</u>.

---

[7]There is a "general rule . . . that jurisdiction over a partner confers jurisdiction over the partnership," <u>Donatelli</u>, 893 F.2d at 466, but this rule relates to the partnership as an entity. The question pertinent here is whether <u>individual</u> partners can be sued in Massachusetts based on contacts of the partnership. <u>See</u> <u>Restatement (Second) of Confl. of Laws</u> § 40 (1971).