**NEW COMM WIRELESS Plaintiff**

v.

**SPRINTCOM, INC. Sprint Spectrum Defendants**

**No. CIV. 01–2270(GAG).**

United States District Court, D. Puerto Rico.

July 10, 2002.

Humberto Guzmán Rodríguez and Eyck O. Lugo–Rivera, Martínez Odell & Calabria, San Juan, PR, for Plaintiff.

Miguel J. Rodríguez–Marxuach and Fernando J. Gierbolini–González, Rodríguez–Marxuach Law Offices, San Juan, PR, for Defendant.

## OPINION AND ORDER

GELPI, United States Magistrate Judge.

This intensely litigated suit was commenced on September 21, 2001 when plaintiff New Comm Wireless ("MoviStar") filed its original complaint against defendants Sprint Spectrum ("Spectrum") and Sprint-Com, Inc. ("SprintCom"), seeking preliminary and permanent injunctive relief and damages under Article 1802 of the Puerto Rico Civil Code, P.R. Laws Ann. Tit. 31 § 5141. (Docket No.1). The case has been before the First Circuit Court of Appeals, on the issue of injunctive relief, and was remanded to this Court for further proceedings. *See New Comm Wireless Services, Inc. v. SprintCom, Inc.,* 287 F.3d 1 (1st Cir.2002). On February 19, 2002, Spectrum filed its Motion to Dismiss for Lack of Personal Jurisdiction. (Docket No. 75). MoviStar filed an opposition thereto on March 28, 2002 (Docket No. 82). Spectrum in turn replied on April 26, 2002. (Docket No. 95). Finally, on May 6, 2002, MoviStar filed its sur reply to Spectrum's response. (Docket No. 100).

The issue presently before the Court could have been fittingly conjured by a crafty law professor for a civil procedure final exam. Both parties have presented extremely persuasive briefs, as well as argued excellently before the Court. The question at bar is whether this Court has personal jurisdiction over Spectrum. To that degree, the Court finds that there exists personal jurisdiction over Spectrum to defend itself against MoviStar's allegation in this forum.

## I. *Personal Jurisdiction* [1]

The matter at hand deals with *in personam* jurisdiction, or personal jurisdiction. The Fourteenth Amendment of the United States Constitution bars the states from "depriving any person of life, liberty or property without due process of law." Joseph W. Glannon, *Civil Procedure: Examples and Explanations* 3 (2001). A forum state is in violation of this guarantee if its courts enter judgment against a defendant who has not had any contact with it. *Id.* In its simplest form, personal jurisdiction relates to the power of a court over a defendant. *See Pritzker v. Yari,* 42 F.3d 53, 59 (1st Cir.1994).

*International Shoe v. Washington* is the landmark case where the Supreme Court developed a "minimum contacts" test to determine whether there exists a basis for exercising personal jurisdiction. *International Shoe v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). *See* Glannon at 4. In *International Shoe,* the Supreme Court held that the courts of a state may exercise personal jurisdiction over a defendant if he has such minimum contacts with the state that it would be fair to require him to return and defend a lawsuit in that state. *Id.* Subsequent to *International Shoe,* the Supreme Court further defined the range of the "minimum contacts" test and with it developed jurisdictional consequences—general and specific personal jurisdiction. *Id.* at 5.

■ The Supreme Court has not clearly indicated where the line lies between contacts that support general and specific personal jurisdiction. *See* Glannon at 5. General jurisdiction is appropriate when the defendant's activities in the state are so "substantial and continuous" that it would expect to be subject to suit there on any claim and would suffer no inconvenience from defending suit there. *Id.* at 7. Similarly, general jurisdiction exists when litigation is not directly founded on the de-

---

**1.** For a succinct discussion of the doctrine of personal jurisdiction, *see* Professor Joseph W. Glannon's *Civil Procedure: Examples and Explanations* 3 (4th ed.2001).

fendant's forum-based contacts, but the defendant nevertheless engaged in continuous and systematic activity, unrelated to the suit, in the forum state. *Pritzker v. Yari*, 42 F.3d at 59–60 (citing *United Elec. Workers v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1088 (1st Cir.1992)). Therefore, the party's contacts must be substantial, continuous and systematic in order to invoke general jurisdiction.

When general jurisdiction is lacking, however, the focus turns on specific jurisdiction. Specific jurisdiction has been defined as an act, which because of its "quality and nature" will support jurisdiction over claims arising out of that single act. *See* Glannon at 5 (quoting *McGee v. International Life Ins. Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957)). Similarly, continuous but limited activity in the forum state will also support specific jurisdiction, that is, jurisdiction over claims arising out of that continuous activity. *Id.* In each of these categories of cases, the in-state activity is limited. In each, the defendant is only subject to jurisdiction for claims arising out of those "minimum contacts". *Id.*

There is nothing in the record that suggests that Spectrum engaged in continuous and systematic activity in Puerto Rico. Therefore, the following analysis focuses exclusively on specific jurisdiction.

## II. *Sprint Spectrum's Motion to Dismiss for Lack of Personal Jurisdiction*

### A. *Burden of Proof and Standard of Review*

■ The burden of proving the Court's personal jurisdiction over defendant Spectrum is on plaintiff MoviStar. *See Daynard v. Ness, Motley, Loadholt, Richard-*

son & Poole, P.A.*, 290 F.3d 42, 50 (1st Cir.2002). The existence of specific personal jurisdiction depends upon MoviStar's ability to satisfy two fundamental conditions: "first that the forum in which the federal district court sits has a long-arm statute that purports to grant jurisdiction over the defendant; and second, that the exercise of jurisdiction pursuant to that statute comports with the strictures of the Constitution." *See Foster–Miller, Inc. v. Babcock & Wilcox Canada*, 46 F.3d 138, 144 (1st Cir.1995) (quoting *Pritzker v. Yari*, 42 F.3d at 60).

■ Faced with a motion to dismiss for lack of personal jurisdiction, the Court may choose from several methods for determining whether MoviStar has met its burden—including the most conventional method, the *prima facie* method. *See Daynard*, 290 F.3d 42, 51. The *prima facie* method permits the Court to "consider only whether the plaintiff has proffered evidence that, if credited, is enough to support the findings of all facts essential to personal jurisdiction." *Foster–Miller*, 46 F.3d at 145 (quoting *Boit v. Gar–Tec Prods.*, 967 F.2d 671, 675 (1st Cir.1992)). To establish a *prima facie* case, MoviStar cannot rely upon pleadings alone, but must present evidence of specific facts. *See Id.*

### B. *Relevant Facts*

In cases where there are disputed and unresolved facts, as in this case, the Court will not resolve factual disputes. *See Id.* As stated above, the Court must accept MoviStar's properly documented evidentiary proffers as true for the purpose of determining the adequacy of the *prima facie* jurisdictional showing. *See Id.*[2] The Court thus shall consider MoviStar's ver-

2. These facts, however, are not conclusive for summary judgment or trial purposes. The Court stresses that it will only accept as true the plaintiff's alleged facts for purposes of

ruling on the present motion. *See, e.g., Cambridge Literary Properties, Ltd., v. W. Goebel Porzellanfabrik G.m.b.H & Co. Kg.*, 295 F.3d at 62 (1st Cir.2002).

sion of the facts, drawn from the original complaint, the amended and second amended complaint, pleadings and affidavits, as well as exhibits from the hearing for injunctive relief previously seen by the Court.[3] *See, e.g., Cambridge Literary Properties, Ltd., v. W. Goebel Porzellanfabrik G.m.b.H & Co. Kg.*, 295 F.3d 59, 62 (1st Cir.2002).

MoviStar is a corporation organized under the laws of the Commonwealth of Puerto Rico, with its principal place of business in the city of Guaynabo, Puerto Rico. (*See* Docket 67, pg. 3). MoviStar is a subsidiary of ClearComm, L.P., a Limited Partnership organized under the laws of the State of Delaware, which has been authorized by the Federal Communications Commission to be a provider of broadband PCS. MoviStar is also engaged in the business of providing mobile telephone services exclusively in Puerto Rico. At present, MoviStar services approximately 190,000 subscribers in Puerto Rico. (*See* Docket 67, pg. 3).

MoviStar commenced this action by filing a request for a temporary restraining order, a preliminary injunction, and recovery of damages against SprintCom, Inc. alleging that SprintCom caused and threatened to continue causing, severe interruptions and irreparable damages to MoviStar's operations in Puerto Rico. (*See* Docket 1, pg. 1). Having signed the Roaming Service Agreement ("RSA") on behalf of SprintCom, Spectrum was recognized as an indispensable party by MoviStar in its initial complaint. (*See* Docket 1, pg. 2).

In its amended complaint, MoviStar included Spectrum not only an indispensable party to the action but also as an entity that with SprintCom allegedly caused and threatened to continue causing, severe interruptions and irreparable damages to MoviStar's operations in Puerto Rico. (*See* Docket 67, pg. 1). MoviStar now seeks to preliminarily and permanently enjoin SprintCom and Spectrum from using System Identification Numbers ("SID"s), which allegedly illegally interfere with the wireless telephone services currently being offered by MoviStar to its clients/subscribers in Puerto Rico. (*See* Docket 67, pg. 1).

SprintCom is in the business of offering CDMA/PCS wireless telephone services throughout the United States. (*See* Docket 67, pg. 2–3). The CDMA/PCS technology presently being employed by both SprintCom and MoviStar requires that each individual market or serviced area be assigned a different SID as part of its signal in each of the markets in which it operates, thus allowing their customers to properly receive their corresponding services. (*See* Docket 67, pg. 3). On July 7, 1999, Spectrum—on behalf on SprintCom and other Sprint affiliates—and MoviStar entered into an Intercarrier Roamer Service Agreement (RSA). (*See* Docket 67, pg. 3). The RSA allows MoviStar's subscribers to access and "roam" on SprintCom's network when said subscribers visit other parts of the United States. (*See* Docket 67, pg. 3). In turn, MoviStar provides SprintCom's subscribers with roaming access on MoviStar's Puerto Rico network. (*See* Docket 67, pg. 3).

---

**3.** On October 29, 2001, this Court granted MoviStar's request for a preliminary injunction. On April 5, 2002, the Court of Appeals vacated the Court's preliminary injunction order and remanded the case for further proceedings. *New Comm Wireless Services, Inc. v. SprintCom, Inc.*, 287 F.3d 1 (1st Cir.2002). Although the Court of Appeals, in its opinion, made several factual determinations based on the record, these were made exclusively for purposes of ruling on the propriety of the issuance of a preliminary injunction by this Court. Thus, said findings are not controlling for purposes of the present jurisdictional analysis which is based on a proffer of what plaintiff could ultimately prove at trial.

As part of the RSA, MoviStar programmed all of its CDMA/PCS mobile phones and handsets to recognize the SID being used in SprintCom's networks, including the U.S. Virgin Islands, but excluding SIDs designated by Sprint for any Puerto Rico markets (MoviStar needed to exclude Sprint's Puerto Rico SIDs in order to prevent "roaming" interruptions in its service). These adjustments were made to MoviStar's preferred roaming list ("PRL")—a computer program loaded onto the handsets designed to recognize on which networks these particular handsets are allowed to "roam". (*See* Docket 67, pg. 3). Networks are identified in the PRL by the use of SIDs. Spectrum's experts created MoviStar's initial PRL, known as "PRL 930". (*See* Docket 67, pg. 3). Without these adjustments, MoviStar's subscribers would have been unable to connect to and roam on any of Sprint-Com's networks throughout the United States. (*See* Docket 67, pg. 4).

On September 17, 2001, SprintCom began offering CDMA/PCS wireless telephone services in Puerto Rico. (*See* Docket 67, pg. 4). Until then, Spectrum notified MoviStar, through the RSA and subsequent technical updates, which SIDs it intended to broadcast in Puerto Rico. (*See* Docket 67, pg. 4). Under the RSA, the SIDs notified for use in Puerto Rico by Spectrum were 5034 (for San Juan) and 5809 (for Mayagüez). These numbers were changed in a technical update on April 13, 2001 at which time Spectrum notified MoviStar of the use of SID 4396 for the Puerto Rico market. (*See* Docket 67, pg. 4). This was a change in assignments, for under Schedule I of the RSA, Spectrum had assigned SID 4396 to the Cleveland market. (*See* Docket 67, pg. 4).

After being notified by MoviStar and other wireless telephone companies of possible problems associated with the broadcast by SprintCom of SID 4396 in Puerto Rico, Spectrum and SprintCom notified MoviStar (via telephone call) on September 14, 2001, that Sprint intended to instead broadcast SID 5142 in Puerto Rico. Before then, Spectrum and SprintCom had led MoviStar to believe that SID 5142 was to be used in the U.S. Virgin Islands and not in Puerto Rico. (*See* Docket 67, pg. 4).

Relying on the information provided in Schedule I of the RSA, MoviStar kept SID 5142 on its customers' handsets. (*See* Docket 67, pg. 5). When broadcasting of SID 5142 began, MoviStar phones began to frequently "hook"[4] onto SprintCom's signal and unexpectedly roam on Sprint-Com's Puerto Rico network. (*See* Docket 67, pg. 6). This interference caused, and continues causing, considerable monetary damages to MoviStar, as well as, irreparable harm to MoviStar's goodwill and reputation within the Puerto Rico wireless communication market. (*See* Docket 67, pg. 6). Despite MoviStar's numerous attempts to negotiate a commercially reasonable solution, both SprintCom and Spectrum were unwilling to assign a different SID to Puerto Rico that does not interfere with MoviStar's operations. In a final effort to reach a solution, MoviStar offered to provide roaming services, at a substantially lower cost, to Sprint users in Puerto Rico in exchange for a delay in the broadcast of SID 5142. (*See* Docket 67, pg. 6). Spectrum and SprintCom rejected this offer.

Pursuant to the RSA, and in reliance of the representations and warranties made by Spectrum (together with the periodic

---

**4.** To operate a wireless communications network, each handset must have a method by which it can access the service carrier's SID. This is sometimes referred to as "hooking"

and is effected through the PRL. *New Comm Wireless Services, Inc. v. SprintCom, Inc.,* 287 F.3d at 3.

technical updates submitted to MoviStar under such RSA), MoviStar loaded all Spectrum-operated and Spectrum-affiliated SIDs onto its subscriber's handsets. (*See* Docket 67, pg. 6–7). Spectrum's own systems analyst and engineers assisted MoviStar in this process and upon its completion commented, "this should take care of your PRL troubles for a long time to come." (*See* Docket 67, pg. 7). Once loaded, MoviStar cannot eliminate or negate SIDs without having to recall and reprogram each and every handset. PRL 930, used in MoviStar handsets, was loaded and programmed in a standard and methodology that is acceptable under industry practice. (*See* Docket 108, pg. 7).

Upon launching its commercial operations, Spectrum and SprintCom, unilaterally, arbitrarily, and with reckless disregard to the business consequences of its roaming partners in Puerto Rico, began broadcasting SID 5142. In accordance with the RSA and the technical update sheets sent by Sprint PCS, SID 5142 was always assigned to the U.S. Virgin Islands market. By broadcasting SID 5142, both Spectrum and SprintCom were also openly breaching their RSA with MoviStar. (*See* Docket 108, pg. 7).

Spectrum and SprintCom's decision to broadcast SID 5142, in a blatant disregard of its obligation and duty under the RSA, caused MoviStar subscribers, from time to time, to hook onto SprintCom's network when attempting to place a call within Puerto Rico. (*See* Docket 108, pg. 7). As a consequence thereof, the vast majority of MoviStar handsets were severely affected and displayed on their screens the words "digital roam". (*See* Docket 108, pgs. 7–8). The immediate consequence was that MoviStar subscribers were prevented from receiving and making calls, thereby costing MoviStar substantial "air time revenue." (*See* Docket 108, pgs. 7–8). Additionally, said situation affected MoviStar's image by giving the impression that its systems and network were and are somehow faulty or defective, causing loss of goodwill with its subscribers. (*See* Docket 108, pg. 8).

Due to Spectrum's and SprintCom's unwillingness to assign a new Puerto Rico SID, MoviStar has suffered and continues to suffer damages to its goodwill and reputation within the Puerto Rico market. (*See* Docket 108, pg. 8). Present and potential customers are faced with the situation of contracting with a wireless telephone company that for all appearances is not able to provide normal cellular service within Puerto Rico and without undue interruptions and roaming interference. (*See* Docket 108, pg. 8). This situation could also cause MoviStar problems in securing much needed long-term financing for the company. Damages suffered by MoviStar arising out of Spectrum's and SprintCom's actions are valued at no less that $3,000,000.00. (*See* Docket 108, pg. 8).

### C. *Puerto Rico's Long-arm Statute*

The first requirement of the proper exercise of specific personal jurisdiction is that the forum have a long-arm statute that grants jurisdiction over the defendant. Puerto Rico Rule of Civil Procedure 4.7 is Puerto Rico's long-arm statute. P.R. Laws Ann. tit 32 App. III R. 4.7. This statute states, in pertinent part:

(a) Whenever the person to be serviced is not domiciled in Puerto Rico, the General Court of Justice shall take jurisdiction over said person if the action or claim arises because said person:

(1) Transacted business in Puerto Rico personally or through an agent; or

(2) Participated in tortious acts within Puerto Rico personally or through his agent...

Under Rule 4.7(a)(1), personal jurisdiction can be exerted over a nonresident defendant when such person "transacted business" in Puerto Rico. *Rios v. Aramark*

*Corp.,* 139 F.Supp.2d 210 (D.P.R.2001). The term "business" is a general one, which includes both commercial transactions as well as those of another nature. *Id.* (citing *Medina v. Tribunal Superior,* 104 D.P.R. 346, 355, 1975 WL 38701 (1975)). The phrase "transacted business" in this context is a commercially practical one, and not a commercially technical one. *Industrial Siderúrgica, Inc. v. Thyssen Steel Caribbean, Inc.,* 114 D.P.R. 548, 557, 1983 WL 204174 (1983); *Rios v. Aramark,* 139 F.Supp.2d 210. Through the aforementioned cases, the courts have defined the term "transacted business" broadly and flexibly.

In the case at hand, MoviStar alleges that Rule 4.7(a)(1) extends jurisdiction to Spectrum because Spectrum transacted business by entering into a long-term agreement (the RSA). Spectrum argues that it only executed the RSA.on behalf of SprintCom. Spectrum argues that only SprintCom is authorized to operate a wireless PCS network and broadcast SIDs in Puerto Rico.

■ Reviewing the transaction in a practical manner, Spectrum's execution of the RSA is enough to establish that it "transacted business" pursuant to Rule 4.7(a)(1). Both SprintCom and MoviStar had only to gain from entering into a RSA. *Both* were to benefit from each other's roaming privileges, for had SprintCom not needed of MoviStar's roaming services, it would not have entered into an agreement with them. Creating and agreeing to a complicated RSA demonstrates the importance of roaming services in a wireless communication network and it was Spec-

trum who executed this crucial connection on behalf of SprintCom. As MoviStar has correctly argued, Spectrum served as the vital link between an ongoing, privileged relationship of two wireless networks. For that reason, Rule 4.7(a)(1) grants jurisdiction over Spectrum in Puerto Rico.

Puerto Rico's long-arm statute requires that only one of the provisions be satisfied in order to fulfill the first step of the personal jurisdiction equation. Having met the test of Rule 4.7(a)(1), it is unnecessary to discuss Spectrum's alleged tortious acts within Puerto Rico pursuant to 4.7(a)(2).

### D. *Due Process*

■ The second requirement of the specific personal jurisdiction equation is that the exercise of jurisdiction fall within constitutional bounds. The Court finds that personal jurisdiction is appropriate in this matter because it is constitutionally permissible.

■ The Court of Appeals has developed a tripartite analysis to "sharpen the logic of personal jurisdiction inquiry". *Pritzker v. Yari,* 42 F.3d at 60—61. First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's court foreseeable. Third, the exercise of jurisdiction must, in light of the Gestalt factors[5], be reasonable. *Id.*

---

**5.** Originally, the United States Supreme Court in *World–Wide Volkswagen v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) applied the Gestalt factors, although not termed under that name. The test was named *"Gestalt"* by First Circuit Appeals Judge Selya in *Donatelli v. National Hockey League,* 893 F.2d 459, 464 (1st Cir.1990), and

has since been included as part of the personal jurisdiction analysis. Gestalt is translated from German to mean "form", "figure", or "shape". Lisa M. Hong, *Case Comment: Montañez v. Banco Progreso, S.A.C.A.,* 11 N.Y. Int'l L. Rev 141 n. 20 (1998). Gestalt psychologists emphasize that people organize

This tripartite analysis is similar to the three-prong test the Supreme Court of Puerto Rico has used in determining if jurisdiction is appropriate. The test provides that: "one, there must be an act done or consummated within the forum by the nonresident defendant; two, the cause of action must arise out of the defendant's action within the forum state; and three, the activity linking the defendant, forum and cause of action must be substantial enough to meet the due process requirements of 'fair play and substantial justice'." *Pizarro v. Hoteles Concorde International,* 907 F.2d 1256, 1258 (1st Cir. 1990); *Escude Cruz v. Ortho Pharmaceutical Corp.,* 619 F.2d 902, 904–905 (1st Cir.1980) (citing *A.H. Thomas Co. v. Superior Court,* 98 P.R.R. 864, 870, 1970 WL 23801 (1970)).

The first two requirements of Puerto Rico's three-prong test are similar to the first element of the Court of Appeals' analysis while the third element is more like the Court's Gestalt test. A careful application of the elements to the facts of this case demonstrates that the exercise of personal jurisdiction over Spectrum does not offend constitutional bounds.

### 1. *Relatedness*

The relatedness test here is easily satisfied, for the standard is flexible and relaxed. *Pritzker v. Yari,* 42 F.3d at 61; *Ticketmaster—New York, Inc. v. Alioto,* 26 F.3d 201, 210 (1st Cir.1994). The underlying claim arises out of the Spectrum's activity in Puerto Rico. The RSA was executed by Spectrum and had it not been for MoviStar's reliance on the RSA, it would not have had problems with its wireless network. By lulling MoviStar into a false sense of security that SID 5142 would not

be broadcast in Puerto Rico, Spectrum's activity affected Puerto Rico in a long-term manner. Therefore, MoviStar's underlying claims arise directly out of Spectrum's execution of the RSA.

The relatedness test here also satisfies the first two prongs of Puerto Rico's *A.H. Thomas* test, for the execution of the long-term RSA was the act done or consummated in Puerto Rico and the cause of action is a result of Spectrum's subsequent blatant disregard of said RSA.

### 2. *Purposeful Availment*

The Court must next determine whether Spectrum's contacts "represent a purposeful availment of the privilege of conducting activities in Puerto Rico, thereby invoking the benefits and protections of its laws and making the defendant's involuntary presence before the Puerto Rico-based court foreseeable." *See Pritzker v. Yari,* 42 F.3d at 61.

In *McGee v. International Life Ins. Co.,* 355 U.S. 220, 223, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), the Court stated that in order to be subject to the jurisdiction of the forum state, a nonresident need have only one contact with the forum, so long as the contact is meaningful. In this landmark case the Court found that one contract had a substantial connection with the forum and granted jurisdiction. *McGee,* therefore, stands for the proposition that "minimum contact" is not necessarily a numbers game; a single contract can fill the bill. *See Pritzker v. Yari,* 42 F.3d at 61. Similarly, *World–Wide Volkswagen Corp. v. Woodson, supra,* is also important because it introduced an explicit "foreseeability" element to the minimum contacts test—for a party who purposefully avails himself to

their experience towards a "good form" using factors of proximity, continuation, similarity and closure. *Id.* (citing Stanley Coren & Joan S. Girgus, *Principles of Perceptual Organiza-* *tion and Spatial Distortion: The Gestalt Illusions,* 6 J. Experimental Psychol. Human Perception & Performance 404, 409 (1980)).

the forum's benefits and privileges should reasonably anticipate that obligations might accompany. *Donatelli v. National Hockey League,* 893 F.2d 459, 464 (1st Cir.1990) (citing *World–Wide Volkswagen* ). According to *World–Wide Volkswagen,* "the foreseeability that is critical to the due process analysis is that the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." *Id.* (quoting *World–Wide Volkswagen,* 444 U.S. at 297, 100 S.Ct. 559).

The case at hand is similar to the situation in *World–Wide Volkswagen.* The RSA was a long-term contract that directly affected MoviStar's subscribers. As for relevant minimum contacts, the RSA is central here, and it has not been denied that the RSA existed. *See, e.g., Cambridge Literary Properties v. Goebel Porzellanfabrik,* 295 F.3d 59, 65 (1st Cir.2002) ("[b]ut as for related minimum contacts, the shipments to Massachusetts are central to recovery here, and Goebel itself does not deny that such shipments did occur"). It is to be noted that MoviStar only provides service within Puerto Rico and would otherwise not be able to provide service to its subscribers in other areas without roaming agreements similar to the RSA. In *Hanson v. Denckla,* the Supreme Court noted that unlike *McGee,* the *Hanson* case "involved the validity of an agreement that was entered without any connection with the forum state". *Hanson v. Denckla,* 357 U.S. 235, 252, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). In the present case, the agreement entered affected and continues to affect Puerto Rico. The practical importance of the RSA amounts to a substantial connection greater than an attenuated circumstance for which jurisdiction cannot be granted.

It has also been stated that the courts must look beyond formalistic measures and evaluate the nature of the contacts and relatedly, the degree to which they represent a purposeful availment of the forum's protections and benefits. *Id.* For that reason, the nature and quality of the RSA satisfies the minimum contacts to establish Spectrum's purposeful availment in this forum.

### 3. *Reasonableness*

■ Having determined that the RSA executed by Spectrum falls within the ambit of sufficient minimum contacts, the Court proceeds to determine if the exercise of jurisdiction over Spectrum does not offend traditional notions of "fair play and substantial justice". *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). The following five Gestalt factors are analyzed to determine the appropriateness of jurisdiction: (1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies. *Pritzker v. Yari,* 42 F.3d at 63–64; *163Pleasant St.,* 960 F.2d at 1088.

These Gestalt factors are designed to put into sharper perspective the reasonableness and fundamental fairness of exercising jurisdiction in particular situations. *Pritzker v. Yari,* 42 F.3d at 64 (citing *Ticketmaster–New York, Inc,* 26 F.3d at 210). Similarly, the Gestalt test satisfies Puerto Rico's *A.H. Thomas* test as well, in that the activity linking the defendant, forum and cause of action must be substantial enough to meet the due process requirements of "fair play and substantial justice". *A.H. Thomas,* 98 P.R.R. at 870, 1970 WL 23801.

■ In a personal jurisdiction case, the burden of proving jurisdiction is on the plaintiff. However, when considering the burden of the defendant of appearing in the forum, the burden shifts to the defendant to prove that appearing in the forum is unconstitutional and inconvenient. *Burger King*, 471 U.S. at 478, 105 S.Ct. 2174. Spectrum argues that it has neither business nor presence in Puerto Rico, thus making it unfair to have to defend itself here. This argument is not sufficient to allow the Court to find that appearing in this forum to litigate its case is unconstitutional and inconvenient to Spectrum. Accordingly, Spectrum has not presented a compelling case that the presence of some other considerations would render jurisdiction unreasonable. *See Id.* at 477, 105 S.Ct. 2174.

Additionally, Puerto Rico has undoubtedly a considerable interest in adjudicating this dispute for so many Puerto Rican residents—both Sprint and MoviStar users, as well as subscribers of other wireless networks (i.e., intervenor Centennial)—continue to have, or may have in the future, problems with their cellular phone connections in correlation with this dispute. Equally, MoviStar, SprintCom and Spectrum have a considerable interest in resolving this dispute for litigation is a long and expensive process and each entities reputation and commercial viability is being undermined each day this dispute persists.

Finally, finding no jurisdiction over Spectrum would undercut the judicial system's interest in resolving this dispute as well as undercutting the common interest of all in promoting substantive social policy. Spectrum may or may not have committed tortious acts in this particular case. *See New Comm Wireless Services, Inc. v. SprintCom, Inc.*, 287 F.3d at 14 (stating that "given the complexity of the technology, the multiplicity of interests involved,

and the tangled nature of the case, anything is possible"). Thus, to excuse Spectrum from this litigation would be poor public policy.

Both the Gestalt and *A.H. Thomas* tests have been satisfied with regard to the due process requirements of the personal jurisdiction doctrine. The Court, thus, finds that it is constitutionally permissible to find jurisdiction over Spectrum.

## III. *Conclusion*

In sum, this Court finds that the exercise of specific personal jurisdiction over Spectrum is appropriate in this case. Furthermore, the Court finds that Puerto Rico's long-arm statute grants personal jurisdiction and that this exercise comports with the strictures of the Constitution.

Spectrum's Motion to Dismiss for Lack of Personal Jurisdiction (Docket No. 75) is hereby **DENIED** without prejudice that it be renewed at the summary judgment or trial stage of this litigation. *See Rice v. Nova Biomedical Corp.*, 38 F.3d 909, 914–915 (7th Cir.1994) ("the denial of a preliminary challenge to personal jurisdiction, like the denial of a preliminary injunction, is not an automatic bar to the renewal of the motion after evidence bearing on it has been obtained by pretrial discovery or presented at trial").

**SO ORDERED.**