Robert HAINEY, Internet Marketing Solutions, Inc., Plaintiffs,

v.

WORLD AM COMMUNICATIONS, INC., Isotec, Inc., and James Alexander, Defendants.

C.A. No. 02–092S.

United States District Court, D. Rhode Island.

May 12, 2003.

Thomas A. Tarro, III, Tarro Law Offices, Warwick, RI, Christine M. Curley, North Kingstown, RI, for Plaintiffs.

Joseph R. Palumbo, Jr., Middletown, RI, James H. Alexander, Westminster, CO, for Defendants.

### DECISION AND ORDER

SMITH, District Judge.

Before the Court is the Motion to Dismiss for Lack of Personal Jurisdiction of Defendants World Am Communications, Inc., Isotec, Inc., and James Alexander ("Defendants"). Defendants assert that Plaintiffs Robert Hainey and Internet Marketing Solutions, Inc. ("Plaintiffs") have not met the required jurisdictional burden under Federal Rule of Civil Procedure 12(b)(2). Oral argument was held on March 11, 2003. Having considered the parties' arguments, the Court grants Defendants' motion to dismiss Counts I, II, and III for lack of personal jurisdiction. Although the Court finds that it has personal jurisdiction over Defendants as to Count IV, and therefore denies the motion as to that Count, Count IV must nevertheless be dismissed for failure to meet the amount in controversy requirement of 28 U.S.C. § 1332(a).

### I.  *Facts*

Accepting the facts and inferences to be drawn therefrom in the light most favorable to the Plaintiffs, as this Court must, the Court finds as follows. Robert Hainey is the president of Internet Marketing Solutions ("IMS"), which is incorporated in both Rhode Island and Colorado. IMS "provid[es] investment consulting and public relations marketing services for various companies." Complaint, ¶ 8. Defendant World Am Communications is a Florida

corporation that provides cellular and digital services, and that designs, manufactures and installs access control panels for the security market. *Id.* at ¶ 2. Defendant Isotec is a Colorado corporation and a wholly owned subsidiary of World Am, and Defendant James Alexander, a Colorado resident, is the president and CEO of World Am and Isotec. *Id.* at ¶¶ 3–4.

The Complaint, brought under this Court's diversity jurisdiction, states that Hainey, d/b/a IMS, was retained to provide consulting, public relations and marketing services to the corporate Defendants, and that Defendants failed to pay for these services and for costs advanced therefor. The Counts are (I) breach of contract, (II) book account, (III) quantum meruit, and (IV) failure to repay a $70,000 loan. The basis for the last Count is that Plaintiffs allege that they loaned Defendants $70,000, which was to be repaid on a demand basis; that Plaintiffs have made demand for repayment with interest; and that Defendants have refused or otherwise failed to tender payment.

Chief Judge Torres conducted a pretrial conference on October 17, 2002, and subsequently permitted the Plaintiffs to conduct discovery limited in scope to the issue of personal jurisdiction. The parties do not dispute that most of the "in-person" meetings between Hainey and Alexander occurred in Florida and New Jersey, but that two meetings occurred in Rhode Island. The first Rhode Island meeting was one where Alexander called Hainey to say he was in New York and decided to drop in on Hainey in Rhode Island. Def.'s Ex. C, p. 30. Plaintiffs allege that this meeting was not fortuitous, and was an important business contact. As for the second Rhode Island meeting, the parties agree that the essential subject of that meeting

was a discussion and negotiation over the financing of the Defendant corporations that ultimately resulted in the disputed loan from Hainey to the Defendants.

The factual allegations undergirding Plaintiffs' assertion of personal jurisdiction fall into two categories: those that relate to Hainey's employment relationship with Defendants (the basis for Counts I, II, and III of the Complaint); and those that relate to the alleged loan Hainey made to one or more of the Defendants (the basis for Count IV).

In the former category, Plaintiffs contend first that Hainey had "almost daily telephone conversations with Alexander" for approximately a year, some of which related to the services being performed by Hainey. Def.'s Ex. A, p. 5. Hainey conducted these calls from Rhode Island. Second, Alexander sent some correspondence to Hainey in Rhode Island. Third, Plaintiffs point to the two meetings between Hainey and Alexander in Rhode Island in the summer of 2000, the first of which Plaintiffs claim, without any substantiating evidence, was business related.[1] Finally, Plaintiffs allege that Defendants sent some press releases to IMS in Rhode Island for distribution. Def.'s Ex. A, p. 4.

In the latter category, Plaintiffs allege that Hainey made a loan or loans to Defendants as a result of the negotiations and agreements at the second Rhode Island meeting, and gave Alexander a check either at that meeting or shortly thereafter. Furthermore, the loan check was signed by Hainey, listed his Warwick, Rhode Island address, and was drawn on Citizens Bank of Rhode Island. Pl.'s Ex. 1. World Am received a wire transfer of funds from Hainey's savings account at the Rhode Island Citizens Bank. Pl.'s Ex. 2. Moreover,

---

**1.** The parties disagree about the nature of this meeting. Plaintiffs allege that this was an important business contact, while Defendants characterize it as essentially a social call.

a facsimile dated February 8, 2001, sent by Alexander to Hainey in Rhode Island, acknowledges a prior loan to World Am, which Alexander has testified came either from Hainey or IMS. Pl's Ex. 3.[2]

## II. *Analysis*

### 1. *The Legal Standard for Personal Jurisdiction*

The burden of establishing personal jurisdiction over the defendant rests on the plaintiff. *Sawtelle v. Farrell*, 70 F.3d 1381, 1387 (1st Cir.1995); *Donatelli v. National Hockey League*, 893 F.2d 459, 463 (1st Cir.1990). In this Circuit, courts use the *prima facie* standard to determine whether personal jurisdiction is lawful. *Rodriguez v. Fullerton Tires Corp.*, 115 F.3d 81, 83 (1st Cir.1997). Under the *prima facie* standard, a plaintiff "must make the showing as to every fact required to satisfy 'both the forum's long-arm statute and the due process clause of the Constitution.' " *Boit v. Gar–Tec Prods., Inc.*, 967 F.2d 671, 675 (1st Cir. 1992) (citing *U.S.S. Yachts, Inc. v. Ocean Yachts, Inc.*, 894 F.2d 9, 11 (1st Cir.1990)). The Court accepts the plaintiff's properly documented evidentiary proffers as true for purposes of determining the adequacy of the *prima facie* showing. *See Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 45 (1st Cir.2002); *Mass. Sch. of Law at Andover, Inc. v. Am.*

*Bar Ass'n*, 142 F.3d 26, 34 (1st Cir.1998) (taking as true, whether or not disputed, the facts as set forth by the plaintiff and construing them in the light most congenial to the plaintiff's jurisdictional claim).

To establish personal jurisdiction, a plaintiff must show that (1) the forum state has a long-arm statute that purports to grant jurisdiction over the defendant[3] and (2) exercising jurisdiction comports with the due process requirements of the Fourteenth Amendment of the U.S. Constitution. *Sawtelle*, 70 F.3d at 1387. Since Rhode Island's long-arm statute claims jurisdiction to the maximum extent permitted by the Fourteenth Amendment, *see Almeida v. Radovsky*, 506 A.2d 1373, 1374 (R.I.1986), the question becomes whether asserting personal jurisdiction over Defendants is consistent with the Due Process Clause.

There are two types of personal jurisdiction, general and specific. *See Pritzker v. Yari*, 42 F.3d 53, 60 (1st Cir.1994). Plaintiffs here claim the existence only of specific jurisdiction. *See* Pl.'s Mem. p. 4.

Specific jurisdiction exists if the following factors obtain:

First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's in-state contacts must represent a purposeful availment

---

**2.** Again, there appears to be a factual dispute about the existence *vel non* of a loan or loans. Plaintiffs have attached several exhibits to their memorandum evidencing the exchange of monies from Hainey to one or more of the Defendants. Alexander denied in his deposition that there was any loan, but did admit that the two discussed "the funding of the company" while he was in Rhode Island. The Court assumes for purposes of this motion that a loan agreement was consummated and money lent pursuant to such an agreement.

**3.** The Rhode Island long-arm statute provides:

> Every foreign corporation, every individual not a resident of this state ... and every partnership or association, composed of any person or persons not such residents, that shall have the necessary minimum contacts with the state of Rhode Island, shall be subject to the jurisdiction of the state of Rhode Island ... in every case not contrary to the provisions of the constitution or laws of the United States. R.I. Gen. Laws § 9–5–33(a).

of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable. Third, the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable.

*Sawtelle,* 70 F.3d at 1389 (citing *United Elec., Radio and Machine Workers of America v. 163 Pleasant St. Corp.,* 960 F.2d 1080, 1089 (1st Cir.1992)); *see Nowak v. Tak How Investments, Ltd.,* 94 F.3d 708, 712–13 (1st Cir.1996) (citing *Pritzker,* 42 F.3d at 60–61).

### 2. *Application of the Personal Jurisdiction Standard*

#### a. *Counts I, II, and III*

■ As dictated by the First Circuit's tripartite formula, the Court begins with the "relatedness" requirement. "[T]he [relatedness] requirement focuses on the nexus between the defendant's contacts and the plaintiff's cause of action." *Ticketmaster–New York, Inc. v. Alioto,* 26 F.3d 201, 206 (1st Cir.1994). The relatedness requirement is satisfied if "the claim underlying the litigation ... directly arise[s] out of, or relate[s] to, the defendant's forum-state activities." *Daynard,* 290 F.3d at 61.

■ Excluding the circumstances that give rise to Count IV, it is clear to this Court that Plaintiffs fall short of meeting the relatedness requirement. The great majority of the meetings between the parties occurred outside of Rhode Island—in New Jersey, New York City, Nevada, and Florida. Def.'s Mem., Ex. B, ¶ 17. In fact, over fifteen meetings between Alexander and Hainey occurred in Florida

alone, and the evidence makes clear that the Defendants transacted business with IMS primarily, if not exclusively, through IMS' Florida office.

Moreover, Plaintiffs have failed to provide any evidence substantiating their claim that the first Rhode Island meeting between Hainey and Alexander relates to Plaintiffs' claims that Hainey was not compensated for his services. Plaintiffs' counsel asserted at oral argument that it is simply common sense to assume that Hainey and Alexander discussed business at this meeting. Even if one makes this assumption, however,[4] there is no evidence that it was the business of Hainey's marketing services which was discussed at this meeting. Hainey's deposition is silent on the subjects of discussion at the first meeting. Hainey and Alexander could well have discussed business entirely unrelated to Hainey's marketing services (*e.g.,* the financing of the companies or other prospective business ventures). Whatever the two discussed, something more is required than having dinner in Rhode Island, during which business of an unspecified nature is discussed, to demonstrate that a cause of action directly arises out of a defendant's contacts with Rhode Island. Therefore, Defendants are not subject to personal jurisdiction in Rhode Island with respect to Counts I, II, and III.

■ While this writer believes that Counts I, II, and III do not survive the test for relatedness, it may be useful, even if technically unnecessary, for the Court to assess the purposeful availment and reasonableness jurisdictional prongs. *See United Elec. Workers,* 960 F.2d at 1091 n. 11 ("The Gestalt factors come into play only if the first two segments of the test for specific jurisdiction have been ful-

---

**4.** In fact, there is no compelling reason to assume that Hainey and Alexander discussed business at this meeting. The two were well acquainted by this time, and the visit might have been purely social.

filled."). Assuming for a moment that Plaintiffs satisfied the relatedness requirement, the application of the purposeful availment and Gestalt factors nevertheless militate against finding personal jurisdiction as to Counts I, II and III.

■ The purposeful availment test focuses on the deliberateness of the defendant's contacts. *Ticketmaster–New York,* 26 F.3d at 207. "[T]he cornerstones upon which the concept of purposeful availment rest are voluntariness and foreseeability." *Sawtelle,* 70 F.3d at 1391 (citing *Ticketmaster–New York,* 26 F.3d at 207).

As noted above, Defendants could not have foreseen that they would be subject to suit in Rhode Island for Plaintiffs' employment compensation-related claims. The evidence before this Court does not indicate that Alexander came to Rhode Island deliberately to transact business with Hainey related to these claims. At most, it indicates that Alexander dropped in on a whim, and leaves to the imagination what he and Hainey discussed over barbequed chicken and a cigar. While the Plaintiffs ask the Court to infer that important business was discussed, this writer imagines it could just as probably have been the Red Sox and Yankees. The point is, there is no evidence on this critical issue, and it exceeds this Court's credulity to assume such a critical fact and then bootstrap from it an intention by Alexander to subject himself to jurisdiction in Rhode Island.

Moreover, exercising personal jurisdiction over Defendants with respect to the employment compensation claims is simply not reasonable in light of the nature of the parties' relationship and the absence of any meaningful connection with Rhode Island. The First Circuit has enumerated the following five Gestalt factors to be used in determining the fairness and reasonableness of asserting personal jurisdiction: (1) the defendant's burden of appearing; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the judicial system's interest in obtaining the most effective resolution of the controversy; and (5) the common interests of all sovereigns in promoting substantive social policies. *Nowak,* 94 F.3d at 717 (citing *United Elec. Workers,* 960 F.2d at 1088) (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 477, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). The parties did the lion's share of their business together almost exclusively in Florida, not Rhode Island. The vast majority of meetings between the principals occurred in Florida, New York and New Jersey, not Rhode Island. Rhode Island's interest in adjudicating the employment compensation claims is therefore minimal. The Defendants' burden of appearing in Rhode Island is substantial, as Defendants maintain no offices, employees, or other relevant contacts here. While a plaintiff's choice of forum is traditionally entitled to deference, all of the remaining Gestalt factors militate against the exercise of personal jurisdiction as to the employment compensation claims.

b. *Count IV*

■ In contrast to Counts I, II and III, the facts that form the basis for Count IV, the alleged loan and Defendants' obligation to repay it on demand, do relate to or arise out of Defendants' Rhode Island contacts. The parties do not dispute that Hainey and Alexander discussed a loan (or "company funding," as Defendants would have it) at the second Rhode Island meeting. The evidence also indicates that Hainey's decision to make the loan was founded in the discussions and negotiations that occurred in Rhode Island. Furthermore, the loan

check was drawn on a Rhode Island bank and the wire transfer issued from Rhode Island. Thus, the nexus between Rhode Island and the facts underlying Defendants' alleged obligation to repay the loan is sufficiently close to establish personal jurisdiction over Defendants as to Count IV.

■ Plaintiffs ask that the Court "merge" Count IV together with the other Counts to determine personal jurisdiction, arguing that all claims arise from the same general business enterprise spearheaded by Hainey and Alexander. This approach is impermissible, however, because "[q]uestions of specific jurisdiction are always tied to the particular claims asserted." *Phillips Exeter Academy v. Howard Phillips Fund, Inc.,* 196 F.3d 284, 289 (1st Cir.1999) (commending the district court for analyzing the jurisdictional adequacy of each tort and contract claim discretely) (citing *United Elec. Workers,* 960 F.2d at 1089 ("The cases that address the question of when this phenomenon [specific jurisdiction] occurs tend to be fact-specific.")); *see also Remick v. Manfredy,* 238 F.3d 248, 255 (3rd Cir.2001) (a conclusion that a district court has specific jurisdiction over a defendant as to a particular claim does not necessarily mean that it has specific jurisdiction over the same defendant as to other claims); *Sears, Roebuck & Co. v. Sears,* 744 F.Supp. 1297, 1307 (D.Del.1990) ("[W]here general jurisdiction ... is lacking, the constitutional analysis distinguishing between general and specific jurisdiction would become meaningless if the finding of specific jurisdiction over one claim provided the basis for extending jurisdiction over all other alleged claims.").

The only First Circuit decision that has expressly articulated the need for a claim-specific personal jurisdiction analysis did so when confronting tort and contract claims in the same action. *See Phillips Exeter Academy,* 196 F.3d at 289. This Court believes that the First Circuit's edict requiring a claim-specific jurisdictional analysis should apply with equal force to separate contract-based claims that are founded in distinct factual allegations. This extension of the rule is warranted in light of the Supreme Court's historic emphasis on foreseeability in the context of fixing the parameters of personal jurisdiction. *See World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) (the foreseeability that is required "is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there."); *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958) ("[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.").

There is no properly proffered evidence that, as a result of the activities alleged in support of Plaintiffs' employment compensation claims, Defendants should have foreseen that they could have been haled into a Rhode Island court. On the other hand, Defendants could well have foreseen that their use of Rhode Island as a situs for negotiating and obtaining a loan from Hainey could subject them to personal jurisdiction here on a claim for their alleged failure to pay off the loan. The facts underlying the two categories of claims are entirely distinct.

3. *Count IV: Subject Matter Jurisdiction and the Amount In Controversy Requirement*

At this juncture, the Court ordinarily would proceed with the personal jurisdic-

tion inquiry (purposeful availment and reasonableness) as to Count IV alone, since it has been determined that personal jurisdiction over Defendants cannot be asserted as to Counts I, II, and III.

■ However, counsel for Defendants suggested to the Court at oral argument that Count IV, which sets forth a demand of $70,000, would not satisfy the amount in controversy required of diversity actions under 28 U.S.C. § 1332(a).[5] When the Court inquired as to this requirement, Plaintiffs' counsel responded that the Court could consider attorneys' fees in determining whether Plaintiffs meet the monetary threshold.

The Court begins by observing that it is inconsequential that Defendants have not moved to dismiss Count IV for lack of subject matter jurisdiction, because the Court is required to address its subject matter jurisdiction over an action, *sua sponte* if need be. *See Leon v. Municipality of San Juan,* 320 F.3d 69, 70 (1st Cir.2003); *Morales Feliciano v. Rullan,* 303 F.3d 1, 6 (1st Cir.2002) ("the preferred—and often the obligatory—practice is that a court, when confronted with a colorable challenge to its subject-matter jurisdiction, should resolve that question before weighing the merits of a pending action").

■ The seminal case in the area of the amount in controversy requirement is *St. Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845 (1938), wherein the Supreme Court stated:

> The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal.

*Id.* at 288–89, 58 S.Ct. 586 (footnotes and citations omitted). Thus, a plaintiff's statement of its damages in its complaint "will control the amount in controversy for jurisdictional purposes if it is made 'in good faith.'" *Coventry Sewage Assoc. v. Dworkin Realty Co.,* 71 F.3d 1, 6 (1st Cir.1995). Here, the pertinent allegations in Count IV are that "[d]uring the course of their business relationship, Plaintiffs loaned Defendants $70,000 which was to be repaid on a demand basis[,]" and "Defendants have failed, refused and neglected to repay the $70,000 plus interest due and owing to the Plaintiffs." Complaint, ¶¶ 22, 24. Since interest is excluded under § 1332(a), Count IV seeks a maximum recovery of $70,000.

■ Moreover, counsel's oral assertion that the Court may consider attorneys' fees in calculating the amount in controversy is incorrect. "Normally, attorney's fees are excluded from the amount-in-controversy determination because 'the successful party does not collect his attorney's fees in addition to or as part of the judgment.'" *Spielman v. Genzyme Corp.,* 251 F.3d 1, 7 (1st Cir.2001) (citing *Velez v. Crown Life Ins. Co.,* 599 F.2d 471, 474 (1st Cir.1979)).[6]

---

**5. Diversity of citizenship; amount in controversy; costs**

(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between—

(1) citizens of different States....

28 U.S.C. § 1332(a).

**6.** The First Circuit recognizes two exceptions to this rule: (1) when attorneys' fees are provided for by contract; and (2) when a statute mandates or allows payment of attorneys' fees. *Spielman,* 251 F.3d at 7. Count IV sets forth a simple failure to repay an alleged debt, so neither exception applies.

As the Plaintiffs do not rely on any other evidence that might augment the recovery sought under Count IV, the Court finds that Count IV fails to meet the amount in controversy requirement for diversity jurisdiction. The Court therefore must dismiss Count IV *sua sponte* for lack of subject matter jurisdiction.

III. *Conclusion*

Based on the foregoing analysis, the Court orders as follows:

1. Defendants' Motion to Dismiss for Lack of Personal Jurisdiction is GRANTED as to Counts I, II, and III;

2. Defendants' Motion to Dismiss for Lack of Personal Jurisdiction is DENIED as to Count IV; and

3. The Court dismisses Count IV *sua sponte* for lack of subject matter jurisdiction.

IT IS SO ORDERED.