PFIP, LLC v. Planet Fitness Enter.   CV-04-250-JD  11/10/04
               UNITED STATES DISTRICT COURT FOR THE
                    DISTRICT OF NEW HAMPSHIRE


PFIP, LLC

        v.                              Civil No. 04-250-JD
                                        Opinion No. 2004 DNH 159
Planet Fitness
Enterprises, Inc., et al.


                          O R D E R


     The plaintiff, PFIP, LLC, brings suit against Planet Fitness

Enterprises, Inc., its related corporations, and its president,

Rick Berks, alleging trademark infringement and unfair practices

under the Lanham Act, copyright infringement in violation of the

Copyright Act, common law trademark infringement, breach of

contract, unjust enrichment, and violation of New Hampshire's

Consumer Protection Act.  The defendants move to dismiss the

claims for lack of personal jurisdiction and, alternatively, ask

that the case be transferred to the Southern District of Florida.

PFIP opposes the motion to dismiss.


                         Background

     PFIP is a New Hampshire corporation that owns certain

"Planet Fitness" trademarks and copyrights.  PFIP is affiliated

with Pla-Fit Franchise, LLC, that markets franchises for "PLANET

FITNESS" exercise centers, including centers in New Hampshire,

Maine, and Florida. Planet Fitness Enterprises, Inc., ("PFE") operates three fitness centers under the name "Planet Fitness," in southern Florida. Rick Berks is its president. PFE began using the name "Planet Fitness" in 1993 under a registered trademark, and PFIP began using the same name several years later.

PFIP brought a cancellation proceeding against PFE to stop its use of the name "Planet Fitness" but dropped the proceeding when it learned of PFE's prior use of the name. PFIP then began negotiations with Berks to resolve use of the name. Berks and Michael Grondahl, the director of PFIP, discussed the matter by telephone between New Hampshire and Florida. Berks's Florida attorney reviewed the documents. Their negotiations led to an agreement that was signed in April of 2002. Under the agreement, PFIP purchased PFE's registered trademark for "Planet Fitness" for $75,000 and granted PFE a license to use the trademark within a specified area of southern Florida.

In May of 2002, Berks and Grondahl met in Florida to discuss the possibility of PFIP purchasing PFE. Other officers of PFIP met with Berks in Florida during August of 2002. Further negotiations took place between PFIP and PFE and through their respective counsel. The parties never reached a final agreement on the sale of PFE to PFIP.

2

In early 2004, PFIP sent franchise information to Berks in Florida, hoping to interest him in becoming a PFIP franchisee. In response, Berks contacted Grondahl for more information. Berks also talked with Grondahl about a possible joint purchase of a health club in Pompano Beach, Florida. PFIP sent Berks more information and samples of PFIP marketing materials.

In February or March of 2004, Berks called Grondahl to ask about beginning a marketing program for FPE in Florida. Grondahl agreed to help Berks set up a corporate membership drive and gave him contact information for the software vendor in Connecticut that PFIP used. Grondahl also gave Berks other marketing information and advice. Berks contends that Grondahl told him that it did not matter if he used the PFIP logo and material in the PFE marketing materials. Berks asked to have his clubs identified on the PFIP web site and then told the web master that Grondahl had agreed to add the PFE clubs to the PFIP web site.

In April of 2004, Berks contacted Spectrum Monthly & Printing, Inc., in Manchester, New Hampshire, to inquire about printing 90,000 pieces for direct mail advertising. Spectrum had done printing for PFIP for several years, and the co-president of Spectrum, Richard Pease, recognized the content and layout of Berks's pieces as being the same as those used by PFIP. Pease believed that Berks was authorized by PFIP to use that content

3

and layout. Berks sent the advertising materials to approximately 90,000 addresses in southern Florida. PFIP alleges that the defendants infringed its copyrights and trademarks by using PFIP logos and trademarks in the advertising materials.

Berks states in his affidavit that he has never been to New Hampshire. The defendants represent, through Berks's affidavit, that all of their records and witnesses are in southern Florida. PFIP, through Grondahl's affidavit, states that all of its records and its witnesses are located in New Hampshire.

Standard of Review

The plaintiff bears the burden of establishing personal jurisdiction. Jet Wine & Spirits v. Bacardi & Co., 298 F.3d 1, 7 (1st Cir. 2003). When jurisdictional issues are raised in a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2), without a hearing, the plaintiff may establish personal jurisdiction by making a prima facie showing of jurisdiction over the defendants.[1] Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 51 (1st Cir. 2002). The court "'accept[s] the plaintiff's (properly documented) evidentiary

---

[1]Neither PFIP nor the defendants requested a hearing, and both have proceeded under the prima facie standard, augmenting their filings with affidavits and other evidence.

4

proffers as true for the purpose of determining the adequacy of the prima facie jurisdictional showing.'" Id. (quoting Foster-Miller v. Babcock & Wilcox Canada, 46 F.3d 138, 145 (1st Cir. 1995)). Those facts are taken as true and in the light most favorable to jurisdiction, whether or not they are disputed by the defendants. Id. The facts proffered by the defendants are also considered, but only to the extent they are not disputed by the plaintiff's properly documented facts.[2] Id.

## Discussion

PFIP alleges both federal and state claims and asserts that subject matter jurisdiction exists pursuant to 15 U.S.C. § 1121 and 28 U.S.C. § 1338, along with supplemental jurisdiction pursuant to 28 U.S.C. § 1367.[3] The personal jurisdiction analysis in federal question cases differs from the analysis in diversity cases, at least initially, because the constitutional limits are provided by the Fifth, rather than the Fourteenth, Amendment. See United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 618 (1st Cir. 2001). The Fifth Amendment requires only that

_____

[2]The court considers the defendants' initial motion and its subsequent motion filed in response to PFIP's amended complaint, and PFIP's objections to both motions.

[3]PFIP alleges "pendant jurisdiction" which has been replaced by supplemental jurisdiction under § 1367.

5

the defendant have adequate contacts with the United States as a whole. Id. There is no dispute that the defendants, Florida corporations and an individual resident of Florida, have sufficient contacts with the United States to satisfy due process.

In addition, however, the defendants must be amenable to service of process, which may be authorized by either the federal statute providing the cause of action or an applicable civil rule. Id.; Fed. R. Civ. P. 4(k). Neither the Lanham Act nor the Copyright Act provides for nationwide service of process, and PFIP has not asserted that any federal statute provides for expanded service. See, e.g., Cambridge Literary Props., Ltd. v. W. Goebel Porzellanfabrik GmbH, 295 F.3d 59, 63 (1st Cir. 2002); Fort Knox Music Inc. v. Baptiste, 203 F.3d 193, 196 (2d Cir. 2000); Int'l Truck & Eng. Corp. v. Dow-Hammond Trucks Co., 221 F. Supp. 2d 898, 901 (N.D. Ill. 2002). In the absence of statutorily provided service, a federal district court will have personal jurisdiction over a defendant under Federal Rule of Civil Procedure 4(k) "only to the extent permitted by the law of the state in which the district court sits." United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp., 960 F.2d 1080, 1086 (1st Cir. 1992) (internal quotation marks omitted). The New Hampshire long-arm statutes applicable to unregistered

6

foreign corporations and to non-resident individuals, New Hampshire Revised Statutes Annotated ("RSA") §§ 293-A:15.10 and 510:4, permit courts to exercise personal jurisdiction to the full extent that due process will allow. <u>Sawtelle v. Farrell</u>, 70 F.3d 1381, 1388 (1st Cir. 1995). Due process requires that the defendants have "certain minimum contacts with New Hampshire such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." <u>Jet Wine & Spirits</u>, 298 F.3d at 7 (internal quotation marks omitted). Personal jurisdiction may be general or specific, depending on "the quality and quantity of the potential defendant's contacts with the forum." <u>Phillips Exeter Acad. v. Howard Phillips Fund</u>, 196 F.3d 284, 288 (1st Cir. 1999).

PFIP argues that the defendants' contacts with New Hampshire support both general and specific jurisdiction.[4] "[A] defendant who has maintained a continuous and systematic linkage with the forum state brings himself within the general jurisdiction of that state's courts in respect to all matters, even those that

---

[4]The parties do not distinguish among the defendants for purposes of the jurisdictional analysis. Berks is alleged, without dispute, to be an officer of the four defendant corporations. It appears on the present record that Berks was acting, at all relevant times, on behalf of the defendant corporations, so that Berks's contacts with New Hampshire are the pertinent contacts with the forum for purposes of the jurisdictional analysis.

7

are unrelated to the defendant's contacts with the forum." Id. (citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984)). In contrast, specific jurisdiction exists "if [the] case relates sufficiently to, or arises from, a significant subset of contacts between the defendant and the forum." Id. "[D]etermining personal jurisdiction has always been more an art than a science . . . in which few answers will be written in black and white. The greys are dominant and even among them the shades are innumerable." Swiss Am. Bank, 274 F.3d at 617 (internal quotation marks and citations omitted).

A.   General Jurisdiction

To establish general jurisdiction, PFIP must show that the defendants had substantial contacts with New Hampshire that were both continuous and systematic and that the exercise of jurisdiction would be reasonable. Swiss Am. Bank, 274 F.3d at 619; 4 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure, § 1067.5, at 507 (2002). Reasonableness is assessed using the five "gestalt" factors that determine the fundamental fairness of exercising jurisdiction. Swiss Am. Bank, 274 F.3d at 619. The test for general jurisdiction is more stringent than the test for specific jurisdiction because it applies to all claims, even those that are unrelated to the defendants' forum

8

contacts.  Id.; Phillips, 196 F.3d at 288.

PFIP contends that Berks's telephone calls, faxes, and mail to PFIP and its attorneys in New Hampshire, along with the defendants' transaction with Spectrum Monthly & Printing in New Hampshire, constitute sufficiently continuous and systematic contacts to satisfy general jurisdiction.  Although the parties dispute who initiated the majority of those contacts, for purposes of general jurisdiction, that dispute appears to be immaterial.  It is undisputed that the defendants have never operated a business in New Hampshire, have never advertised or otherwise solicited business here, and have no representative here.  The defendants' only contacts with New Hampshire are their interactions with PFIP and Spectrum between 2002 and 2004.

The defendants' communications with PFIP in New Hampshire by telephone, mail, and fax are contacts for purposes of personal jurisdiction.  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476 (1985).  However, to meet the general jurisdiction standard, PFIP must show that the defendants were "engaged in longstanding business in the forum state, such as marketing or shipping products, or performing services or maintaining one or more offices there; activities that are less extensive than that will not qualify." 4 Wright & Miller, supra, § 1067.5, at 507.

For example, a defendant's contacts that consisted of

"sending its chief executive officer to Houston for a contract-negotiation session; accepting into its New York bank account checks drawn on a Houston bank; purchasing helicopters, equipment, and training services from Bell Helicopter [in Texas] for substantial sums; and sending personnel to Bell's facilities in Fort Worth for training" were not enough to establish general jurisdiction. Helicopteros, 466 U.S. at 416. In another case involving the sufficiency of contacts with the United States, the defendant advertised for two years in a magazine in the United States, subscribed to a credit card company and entered a licensing agreement with another company in the United States, participated in litigation in the United States, entered a joint venture with another bank here, and had other banking relationships with companies here, but the court found those contacts were insufficient to establish general jurisdiction. Swiss Am. Bank, 274 F.3d at 619-20; see also, e.g., Cent. Freight Lines Inc. v. APA Trans. Corp., 322 F.3d 376, 381 (5th Cir. 2003) (temporary business location in forum, arranging and receiving shipments in forum, and developing business and negotiating contracts in forum not enough where defendant did not actually operate in forum); Sandstrom v. ChemLawn Corp., 904 F.2d 83, 89-90 (1st Cir. 1990) (securing license and hiring agent in Maine to do business in the future and recruiting personnel there

10

insufficient to establish general jurisdiction); <u>In re New Motor Vehicles Canadian Export Antitrust Litg.</u>, 307 F. Supp. 2d 145, 150-51 (D. Me. 2004) (using forum-based advertising services, attending meetings in the forum, and purchasing parts there not enough).

The defendants' sporadic contacts with New Hampshire by telephone, fax, and mail over a period of only two years are insufficient to meet the high standard of general jurisdiction. When the plaintiff is unable to show sufficient contacts with the forum, the court need not consider the gestalt factors. <u>Donatelli v. Nat'l Hockey League</u>, 893 F.2d 459, 465 (1st Cir. 1990). Therefore, PFIP has not shown that general jurisdiction exists over the defendants.


B. <u>Specific Jurisdiction</u>

The analysis of specific jurisdiction is divided into three parts: relatedness, purposeful availment, and reasonableness. <u>Daynard</u>, 290 F.3d at 60. First, each claim must directly relate to or arise out of the defendants' contacts with the forum state. <u>Phillips</u>, 196 F.3d at 288. Second, "those contacts [must] constitute purposeful availment of the benefits and protections afforded by the forum's laws." <u>Id.</u> Third, the overall reasonableness of exercising jurisdiction over the defendants

considered in light of the "gestalt" factors must favor exercising jurisdiction.  Id.  Specific personal jurisdiction is both defendant-specific and claim-specific, so that jurisdiction may exist as to some claims and some defendants but not others.[5] Id. at 289; see also Remick v. Manfredy, 238 F.3d 248, 255 (3d Cir. 2001); Hainey v. World Am Communications, Inc., 263 F. Supp. 2d 338, 344 (D.R.I. 2003).

1.  Relatedness.

For activity to be significant in the context of specific jurisdiction, the plaintiff's claim must directly arise from that activity.  Phillips, 196 F.3d at 289.  That is, "the defendant's in-state contact must form an important or at least material element of proof" for the plaintiff's claim.  United Elec. Workers, 960 F.2d at 1089 (internal quotation marks and brackets omitted).  Because the analysis is claim-specific, claims based on different theories, such as contract and tort, are analyzed differently.  Mass. Sch. of Law v. Am. Bar Ass'n, 142 F.3d 26, 35 (1st Cir. 1998).

---

[5]In this case, the parties do not differentiate among the defendants.  Therefore, the court will not analyze personal jurisdiction separately as to each defendant.

         a.  Infringement and related claims.

In its first and second claims, PFIP alleges that the defendants infringed its trademarks and falsely designated origin by using its trademarks in violation of the Lanham Act, 15 U.S.C. §§ 1114(1) and 1125(a).  PFIP's third claim alleges infringement in violation of PFIP's common law trademark rights and the Copyright Act, 17 U.S.C. § 106.  In its fourth and seventh claims, PFIP alleges that the defendants violated the New Hampshire Consumer Protection Act, RSA 358-A, and are liable for unjust enrichment.

Infringement and unfair competition claims are analyzed as tort claims.  See Hard Rock Café Licensing Corp. v. Concession Serv., Inc., 955 F.2d 1143, 1150 (7th Cir. 1992).  Some courts have applied an "effects test," based on Calder v. Jones, 465 U.S. 783 (1984), to decide personal jurisdiction in infringement cases, concluding that "the state in which the injury occurs is the state in which the tort occurs."  Indianapolis Colts v. Metro. Baltimore Football Club, 34 F.3d 410, 412 (7th Cir. 1994); see also Lighthouse Carwash Sys., LLC v. Illuminator Bldg. Co., 2004 WL 2378844, at *3-*4 (S.D. Ind. Aug. 31, 2004); Isbell v. DM Records, Inc., 2004 WL 1243153, at *10-*11 (N.D. Tex. June 4, 2004).  But see 5 J. Thomas McCarthy, McCarthy on Trademarks &

13

Unfair Competition § 32.38 (4th ed. 2004) (disagreeing with application of Calder in Indianapolis Colts).

The First Circuit, however, suggests that the Calder "effects test" should be limited to the purposeful availment element of specific jurisdiction. See Swiss Am. Bank, 274 F.3d at 623-24. Other courts have found that the "effects test" cannot provide a separate basis for specific jurisdiction in infringement cases as allowed by the Seventh Circuit. See, e.g., LCW Automotive Corp. v. Restivo Enters., 2004 WL 2203440, at *7 (W.D. Tex. Sept. 24, 2004); Lindgren v. GDT, LLC, 312 F. Supp. 2d 1125, 1132-33 (S.D. Iowa 2004); McCarthy, supra, § 32:38 (stating "that it is a mis-reading of Calder to find personal jurisdiction in the trademark owner's home state solely because the trademark owner feels the effects there" and citing cases). The court instead should look at the legal theory to determine what conduct is material to each claim and in the case of tort claims conduct that is a "but for" cause of the claim is considered. See Cambridge Literary, 295 F.3d at 64-65.

PFIP contends that the defendants' use of Spectrum in New Hampshire to print advertising using PFIP's logos and trademarks is a "but for" cause of the infringement and unfair competition claims. Copying is an essential element of a copyright infringement case. See 17 U.S.C. § 106; Gamma Audio & Video,

14

Inc. v. Ean-Chea, 11 F.3d 1106, 1114 (1st Cir. 1993).  In addition there is some indication that the defendants used Spectrum because it also did printing for PFIP.  It appears, therefore, that the defendants' contact with Spectrum is directly related to the copyright infringement claims.

PFIP's trademark infringement, unfair competition, and unjust enrichment theories focus on the defendants' use of its logos and trademarks, that is the dissemination of the advertising and other display of the logos and trademarks in Florida.  As alleged, the defendants' order to have the materials printed in New Hampshire has little or nothing to do with those claims.  Therefore, the defendants' New Hampshire activity does not appear to be related to those claims.

PFIP argues that "but for" the materials having been printed, it would not have been injured by the defendants' actions and that it felt the injury in New Hampshire.  Relatedness, however, is not satisfied by the in-forum effects of the defendants' extra-forum activities.  See Swiss Am. Bank, 274 F.3d at 625.  Therefore, the printing contact with New Hampshire is at best only minimally related to the trademark infringement claim and related tort claims.

15

b.  Breach of contract claim.

The mere existence of a contractual relationship between the parties is insufficient to support the exercise of personal jurisdiction.  Burger King, 471 U.S. 478.  Instead, the court must ask "whether the defendant's contacts with the forum were instrumental either in the formation of the contract or in its breach."  Phillips, 196 F.3d at 289.  In cases such as this one, where the defendants' actions involving the forum state "are less tangible than physical presence[,] . . . an inquiring court must determine the extent to which the defendant directed an out-of-state activity at the forum" to decide whether the activity is a contact, for jurisdictional purposes.  Id.

The formation of the license agreement took place through communications between New Hampshire and Florida.  PFIP initiated the contact.  The record does not indicate that the defendants directed activity at New Hampshire.  Therefore, the contact that led to the formation of the agreement does not appear to have particularly involved New Hampshire.

PFIP alleges that the agreement was breached when the defendants obtained materials with PFIP logos and trademarks after feigning interest in a PFIP franchise and also when they registered the name "PLANET FITNESS" with the Secretary of State

16

in Florida.  PFIP initiated contact with PFE to interest Berks in a PFIP franchise by sending materials to him in Florida.  Berks then responded to PFIP's overtures.  No New Hampshire contacts are implicated by the defendants' registration of the "Planet Fitness" name in Florida.  Therefore, the defendants' contacts with New Hampshire were not instrumental in either the formation or the  alleged breach of the agreement.

2.  Purposeful availment.

"The purposeful availment test requires us to consider whether [the defendants'] contacts with New Hampshire represent a purposeful availment of the privilege of conducting activities in New Hampshire, thereby invoking the benefits and protections of its laws and making the defendants' involuntary presence before the state's courts foreseeable."  Phillips, 196 F.3d at 292 (internal quotation marks and brackets omitted).  To demonstrate purposeful availment, the plaintiff must proffer "evidence that the defendant[s] actually reached out to the plaintiff's state of residence to create a relationship - - say, by solicitation, - - the mere fact that the defendant[s] willingly entered into a tendered relationship does not carry the day."  Id.  Purposeful availment depends upon the extent to which the defendants voluntarily took action that made it foreseeable they might be

required to defend themselves in court in New Hampshire. See Jet Wine, 298 F.3d at 11.

When considering a contract claim, the court evaluates "the parties' 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing' to determine whether the defendants purposefully established minimum contacts." Daynard, 290 F.3d at 52 (quoting Burger King, 471 U.S. at 479). The Calder "effects test" may provide some guidance in evaluating purposeful availment in the context of intentional torts, but only when both the actual tort and its consequences occurred in the forum. Swiss Am. Bank, 274 F.3d at 624.

To the extent that copying PFIP's trademarks and logos by having materials printed in New Hampshire constitutes a copyright violation and PFIP was injured in New Hampshire by that action, the "effects test" would support purposeful availment with respect to that claim. PFIP's case is stronger if the inference is credited that the defendants hired Spectrum because of its connection with PFIP. Therefore, purposeful availment appears to exist with respect to the copyright claims.

The defendants' contacts with New Hampshire do not show purposeful availment in the context of PFIP' other claims, however. The defendants did not distribute the allegedly

18

infringing advertising in New Hampshire, did not and do not operate exercise facilities here, and do not plan to do so in the future. The parties' agreement pertains to the defendants' activities in Florida and includes a choice-of-law provision specifying Florida law. Although Berks and Grondahl continued to have business contact with each other, by telephone, fax, and mail between Florida and New Hampshire, no further agreement was reached, and their contact appears to have been primarily the result of PFIP's initial overtures. Therefore, PFIP has not shown that the defendants voluntarily reached out to New Hampshire to create a relationship so as to make it foreseeable that they would be required to defend themselves in New Hampshire against the infringement and unfair competition claims PFIP alleges.[6]

### 3. Gestalt factors.

Whether it is reasonable to exercise personal jurisdiction depends on weighing the "gestalt factors":

> (1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and

---

[6]In contrast, for example, if the suit were an action brought by Spectrum against the defendants alleging breach of the printing agreement, personal jurisdiction would likely be appropriate in New Hampshire.

effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies.

Jet Wine, 298 F.3d at 11 (quoting Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 150 (1st Cir. 1995)). The reasonableness inquiry operates on a sliding scale that depends on the strength of the plaintiff's showing of relatedness and purposeful availment. Sawtelle, 70 F.3d at 1394. When those elements of specific personal jurisdiction are clearly established, the gestalt factors rarely preclude jurisdiction. Cambridge Literary, 295 F.3d at 66. On the other hand, when the defendants' minimum contacts are weak or worse, the gestalt factors may tip the balance against exercising jurisdiction. Nowak v. Tak How Investments, LTD, 94 F.3d 708, 717 (1st Cir. 1996). The primary function of weighing the factors is to put into "sharper perspective the reasonableness and fundamental fairness of exercising jurisdiction." Foster-Miller, Inc., 46 F.3d at 150.

Despite PFIP's protestations to the contrary, defending a suit in New Hampshire would necessarily put some burden on the defendants who are Florida corporations and an individual

20

resident of Florida.[7]  They do not do business in New Hampshire or anywhere else outside of Florida, and the record does not suggest that they have any other base of operations here.  Cf. Jet Wine, 298 F.3d at 11 (noting forum's distance from place of defendant's incorporation but also that international company should not expect to avoid United States courts).  Nevertheless, the defendants have not shown or even argued that defending a suit in New Hampshire would place an unusual burden on them, which is necessary for this factor to have constitutional significance.  See Sawtelle, 70 F.3d at 1395.

New Hampshire has an interest in having the dispute adjudicated here because PFIP is a New Hampshire business.  That interest is not compelling, however, because nearly all of the challenged activities occurred in Florida rather than New Hampshire.  See id.  In addition, with respect to the breach of contract claim, the parties' agreement provides that Florida law, rather than New Hampshire law, governs.  See Daynard, 290 F.3d at 62.  Therefore, the forum state's minimal interest in the case does not support jurisdiction.

_____

[7]The defendants failed to address the gestalt factors, optimistically assuming that their arguments with respect to relatedness and purposeful availment were sufficient to defeat jurisdiction.  Despite this omission, the court will assess the reasonableness of exercising jurisdiction in this case.

As in most cases, it is undoubtedly more convenient for PFIP to litigate its claims here. The plaintiff's choice of forum is entitled to some deference. Sawtelle, 70 F.3d at 1395.

The fourth factor is the judicial system's interest in obtaining the most effective resolution of the dispute between the parties. "Usually this factor is a wash." Nowak, 94 F.3d at 718. When the exercise of jurisdiction would likely result in having the dispute litigated in different places, however, this factor counsels against doing so. Pritzker v. Yari, 41 F.3d 53, 64 (1st Cir. 1994). In this case, sufficient contacts between the defendants and New Hampshire appear to support jurisdiction only with respect to the copyright claims, leaving PFIP without a remedy here for the other claims. Because the case in this forum would not address all of PFIP's claims, the judicial system's interest weighs against exercising jurisdiction.

The last gestalt factor requires consideration of any governmental interests in the substantive social policies implicated by the litigation. New Hampshire has a policy interest in protecting its businesses from unfair or infringing practices of out-of-state actors and in providing a forum for litigating such disputes. See, e.g., Nowak, 94 F.3d at 719. Florida also has an interest in protecting its residents and businesses. In addition, Florida has an interest in preventing

22

confusion among its residents and visitors to the state due to copyright or trademark infringement or other unfair practices. Therefore, the governmental interests appear to be evenly balanced or to favor Florida.

On balance, the gestalt factors do not demonstrate that exercising jurisdiction over the defendants here would be constitutionally reasonable. Only the third factor, the convenience of the forum for PFIP, favors jurisdiction here. The other factors are either of no particular import or weigh against exercising jurisdiction here. Therefore, the court concludes that given the weak showing PFIP has made on the first two elements, relatedness and purposeful availment, the gestalt factors tip the balance against exercising jurisdiction in this case.

C. Venue

Because personal jurisdiction over the defendants is lacking in this case, the court will not consider that part of the defendants' motion seeking to transfer the case to the Southern District of Florida.

23

## Conclusion

For the foregoing reasons, the defendants' motions to dismiss (documents no. 6 and 12) are granted. The case is dismissed for lack of personal jurisdiction, without prejudice. The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

Joseph A. DiClerico, Jr.
United States District Judge

October 10, 2004

cc:  Thomas J. Donovan, Esquire
     Theresa C. Tucker, Esquire